## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

FILED

12 MAY 14  A 10: 56

| | |
|---|---|
| LIBERTARIAN PARTY OF VIRGINIA and DARRYL BONNER, <br><br> Plaintiffs, <br><br> v. <br><br> CHARLES JUDD , KIMBERLY BOWERS , and DON PALMER, in their official capacities as members of the Virginia State Board of Elections, <br><br> Defendants. | CIVIL ACTION NO. _3:12 cv367_ |

## VERIFIED COMPLAINT

### NATURE OF THE CASE

1.     This is an action to enforce rights that lie at the core of protected political speech. At issue is the requirement in Va. Code Ann. § 24.2-543 that petition circulators for non-party Presidential candidates be residents of the Commonwealth of Virginia.  This provision violates freedoms of speech and association guaranteed by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983.  Plaintiffs ask this Court for declaratory and injunctive relief prohibiting state officials from enforcing the unconstitutional provision now and in the future.

### JURISDICTION AND VENUE

2.     This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331.

3.     This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

4.     Venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391(b).

## PARTIES

5.     Plaintiff Libertarian Party of Virginia (LPVA) is a Virginia political organization dedicated to principles of personal and economic liberty that regularly fields candidates for President, Congress, and state office.

6.     Plaintiff Darryl Bonner is a resident of Pennsylvania. He is a Libertarian and a paid professional petition circulator.

7.     Defendant Charles Judd is the Chairman of the Virginia State Board of Elections. As a member of the board, he is responsible for prescribing the forms for signature collection and for receiving petition signatures and certifying candidates for President and Vice President. Va. Code Ann. § 24.2-543. He is charged with supervising and coordinating the work of the county and city electoral boards and registrars in properly administering the election laws of the state. Va. Code Ann. § 24.2-103. He is sued in his official capacity only.

8.     Defendant Kimberly Bowers is the Vice-Chairwoman of the Virginia State Board of Elections. As a member of the board, she is responsible for prescribing the forms for signature collection and for receiving petition signatures and certifying candidates for President and Vice President. Va. Code Ann. § 24.2-543. She is charged with supervising and coordinating the work of the county and city electoral boards and registrars in properly administering the election laws of the state. Va. Code Ann. § 24.2-103. She is sued in her official capacity only.

9.      Defendant Don Palmer is the Secretary of the Virginia State Board of Elections. As a member of the board, he is responsible for prescribing the forms for signature collection and for receiving petition signatures and certifying candidates for President and Vice President. Va. Code Ann. § 24.2-543. He is charged with supervising and coordinating the work of the county and city electoral boards and registrars in properly administering the election laws of the state. Va. Code Ann. § 24.2-103. He is sued in his official capacity only.

## FACTUAL BACKGROUND

10.     Under Virginia law, the LPVA is not considered a "political party" because it has not "at either of the two preceding statewide general elections, received at least 10 percent of the total vote cast for any statewide office filled in that election." Va. Code Ann. § 24.2-101. Therefore, its Presidential candidates do not obtain a place on the general election ballot through a primary or other statutory nominating process, but by the petition process set forth in Va. Code Ann. § 24.2-543.

11.     Under the previous version of Va. Code Ann. § 24.2-543, in order for its candidate to appear on the ballot, the LPVA was required to submit a petition that "shall be signed by at least 10,000 qualified voters and include signatures of at least 400 qualified voters from each congressional district," and "[t]he signature of each petitioner shall be witnessed by a person who is a qualified voter, or qualified to register to vote, and whose affidavit to that effect appears on each page of the petition." Only a resident of the Commonwealth of Virginia may be a qualified voter or qualified to register to vote. Va. Code Ann. § 24.2-101.

12.     Under a new version of Va. Code Ann. § 24.2-543, which was passed by the General Assembly in its 2012 session and went into effect on March 7, 2012, petition signatures

3

must be witnessed by a person who is "legal resident of the Commonwealth and who is not a minor or a felon whose voting rights have not been restored." 2012 Virginia Laws Ch. 166.

13.    Thus, under both the former version and the new version of the statute, petition signatures must be witnessed by a resident of the Commonwealth of Virginia. Signatures witnessed by a non-resident are declared invalid.

14.    The deadline for non-"political party" organizations to collect signatures for a presidential candidate for the November 2012 Presidential election is August 24, 2012.

15.    As it has in past presidential campaigns, LPVA is collecting signatures for the 2012 Libertarian presidential candidate using volunteer and paid circulators who are members of the LPVA and residents of Virginia.

16.    The Virginia residency requirement puts the LPVA in a precarious position because it is only aware of two paid professional circulators who are both Libertarians and residents of Virginia and who are consistently available. In past campaigns, these two people have been responsible for collecting a significant number of the required signatures. If either of them were to take ill or otherwise become unavailable, the LPVA would be unlikely to be able to collect the required 10,000 signatures. The LPVA intends to field presidential candidates in future races and expect to face similar constraints.

17.    The Virginia residency requirement is particularly burdensome for the LPVA this year because Virginia's decennial redistricting was only recently completed by the General Assembly and precleared by the United States Department of Justice. Because the petitions for LPVA's candidate must list the names of one elector from each Congressional district, LPVA could not prepare its petitions until it knew the boundaries for the Congressional districts. Thus, although the petition period began by statute on January 1, 2012, LPVA refrained from

collecting signatures until the day after the Congressional redistricting plan was precleared by the Department of Justice on March 14, 2012. This delay caused the LPVA to lose 75 days of signature collection. This loss of time for circulating petitions makes it even more difficult than usual for the LPVA to collect enough signatures by the deadline without using nonresident circulators.[1]

18.    Plaintiff Darryl Bonner circulates petitions for Libertarians and other third-party candidates in elections all over the country. Bonner considers his work an important means of expressing his belief that third-party candidates play a significant role in the political system and should be allowed a place on the ballots. With respect to his work on behalf of Libertarians, Bonner believes that the work is an important way for him to convey Libertarian values and policies to citizens throughout the country.

19.    Bonner would like to circulate petitions for the LPVA and its presidential candidate in Virginia but, due to the residency requirement, is unable to do so without being accompanied by a Virginia resident to witness the signatures. Bonner attempted to collect signatures for the Green Party in Virginia in 2008, but found that being accompanied by a non-professional Virginia resident significantly slowed the process down and inhibited his ability to communicate effectively with potential signatories.

20.    The circulation of petitions is core political speech.

---

[1] The LPVA lost even more time for petition circulation because on March 2, 2012, while preclearance of the new districts was still pending, the Virginia General Assembly passed House Bill 1551, which provided that if redistricting takes place in the middle of a petition period, petitioners could rely on the old districts for purposes of collecting signatures. In reliance on House Bill 1551, LPVA began collecting signatures based on the old districts on March 15, 2012. However, On April 9, 2012 the governor amended the bill to provide that it would not take effect until January 1, 2013, and on April 18, 2012 the General Assembly passed the bill as amended. After seeking guidance from the Virginia State Board of Elections, the LPVA was informed on April 25, 2012 that none of the signatures on petitions for which electors were allocated under the old Congressional districts would count toward the 10,000 signatures required. Thus, the LPVA had to begin collecting signatures from scratch with a new slate of electors.

21.    The state residency requirement imposed by Va. Code Ann. § 24.2-543 reduces the pool of circulators available to support the LPVA's presidential candidate placing a severe burden on the candidate's and the LPVA's First Amendment rights by making it more difficult for them to disseminate their political views, to choose the most effective means of conveying their message, to associate in a meaningful way with the prospective solicitors for the purposes of eliciting political change, to gain access to the ballot, and to utilize the endorsement of their candidate which can be implicit in a solicitor's efforts to gather signatures on the candidates' behalf.

22.    The state residency requirement imposed by Va. Code Ann. 24.2-543 imposes a severe burden on Bonner's First Amendment rights by restricting the nature of support he can offer candidates, restricting the type of speech he can engage in in Virginia and restricting his right to associate with the LPVA and with the candidates and voters of Virginia.

23.    The state residency requirement imposed by Va. Code Ann. § 24.2-543 reduces the quantity of petition circulators in Virginia, thereby diminishing the political speech available to the voters of Virginia and violating voters' First Amendment rights to receive information and to participate in the marketplace of ideas.

24.    The state residency requirement imposed by Va. Code Ann. § 24.2-543 is not justified by a sufficiently weighty state interest.

25.    The state residency requirement imposed by Va. Code Ann. § 24.2-543 is not narrowly tailored to advance a compelling state interest.

## INJUNCTIVE AND DECLARATORY RELIEF IS NECESSARY

26.    An actual and justiciable controversy exists as to which the plaintiffs require a declaration of their rights.

6

27.     Unless the requested injunctive relief issues, the defendants will continue to infringe the constitutional rights of plaintiffs and other candidates, voters, and petition circulators.

28.     The plaintiffs have no adequate remedy at law for the defendant's violations of their rights.

29.     The plaintiffs are suffering irreparable harm as a result of the defendant's violations of the law and Constitution and the harm will continue unless declared unlawful and enjoined by this Court.

## COUNT ONE

### First and Fourteenth Amendments

30.     The allegations of paragraphs 1 through 29 are hereby incorporated as though fully set forth herein.

31.     The circulation of petitions is core political speech.

32.     The state residency requirement for petition circulators contained in Va. Code Ann. § 24.2-543 places a severe burden on core political speech and is subject to strict scrutiny.

33.     Because the state residency requirement is not narrowly tailored to further a compelling government interest, the provision violates the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

34.     Alternatively, because no state regulatory interests justify the state residency requirement, the provision violates the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution and enforced by 42 U.S.C. § 1983.

7

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. enter a declaratory judgment that the state residency requirement contained in Va. Code Ann. § 24.2-543 violates the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution;

b. enter a preliminary and permanent injunction enjoining the defendants from enforcing the state residency requirement;

c. award the plaintiffs the cost of this action together with their reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988; and

d. retain jurisdiction of this action and grant the plaintiffs such other relief which may in the determination of this Court be necessary and proper.

Dated:  May 14, 2012

REBECCA K. GLENBERG (VSB No. 44099)
American Civil Liberties Union of Virginia
Foundation, Inc.
530 East Main Street, Suite 310
Richmond, Virginia 23219
(804) 644-8080
(804) 649-2733 (fax)
rglenberg@acluva.org

KATIE O'CONNOR (*pro hac vice* pending)
American Civil Liberties Union Foundation, Inc.
230 Peachtree Street, NW, Suite 1440
Atlanta, Georgia 30303
(404) 523-2721
(404) 653-0331 (fax)
koconnor@aclu.org

ATTORNEYS FOR THE PLAINTIFFS

8

## VERIFICATION

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and ability.

Date: 4-19-2012

Charles E. Moulton, Jr.
Charles E. Moulton. Jr.
Chair
Libertarian Party of Virginia

## VERIFICATION

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and ability.

Date: _1/-20-/2_

Darryl Bonner