IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF VIRGINIA and DARRYL BONNER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: 3:12-cv-367-JAG ) ) |
| CHARLES JUDD, *et al.*, | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF IN SUPPORT OF
THEIR MOTION FOR PRELIMINARY INJUNCTION**

The defendants respectfully submit this brief in response to plaintiffs' motion and brief in support of their motion for preliminary injunction. Because the plaintiffs cannot demonstrate a near certainty of success on the merits of their constitutional challenge to Virginia's residency requirement for petition circulators, which is justified by the State's compelling interest in punishing and deterring election fraud, the extraordinary relief of a preliminary injunction should be denied. A contrary decision would convert the professional circulation of petitions into an Article IV privilege or immunity of national citizenship, a holding without support in American constitutional law.

**STANDARD OF REVIEW**

Preliminary injunctive relief, "an extraordinary remedy never available as of right," may be had only when the plaintiff makes a "clear showing" "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 22, 24 (2008); *accord Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2756, 2761 (2010) (reversing an award of injunctive relief as an abuse of discretion); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). All four factors must be shown. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated by* 130 S. Ct. 2371 (2010), *reinstated in pertinent part by* 607 F.3d 355 (4th Cir. 2010); *see Monsanto*, 130 S. Ct. at 2757 ("An injunction should issue only if the traditional four-factor test is satisfied.").

And because plaintiffs seek not to preserve, but alter, the status quo to mandate counting petitions gathered in violation of Virginia law for the purpose of placing a candidate on the ballot, their request for "[m]andatory preliminary injunctive relief" is "disfavored," and the "exacting standard of review [for preliminary injunctive relief is] even more searching." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525-26 (4th Cir. 2003) ("[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind."); *accord Perry v. Judd*, No. 12-1067, 2012 U.S. App. LEXIS 980, at *11-12 (4th Cir. Jan. 17, 2012) (applying this heightened standard of review to a request for preliminary mandatory injunctive relief against the Virginia residency requirement for petition circulators). To carry their burden of persuasion, the plaintiffs thus must establish,

among other things, that "the legal rights at issue are 'indisputably clear.'" *Lux v. Rodrigues*, 131 S. Ct. 5, 6 (2010) (Roberts, C.J., in chambers) (applying that standard in denying an application for preliminary mandatory injunctive relief against a Virginia statute mandating district residency for petition circulators); *see In re Microsoft*, 333 F.3d at 525 (citing *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235 (1972) (Rehnquist, J., in chambers) for the proposition that "the applicants' right to relief must be indisputably clear" to obtain preliminary mandatory injunctive relief). Plaintiffs cannot carry this burden.

## ARGUMENT

**I.     The Requisite Heightened Showing of Likely Success Cannot Be Made Where the Supreme Court and Fourth Circuit Have Reserved Judgment On the Issue, the Circuits Are Split, and the Judges of the Eastern District Disagree.**

Plaintiffs simply cannot clear the near certainty of success hurdle, as the right they claim is not clearly established, but widely disputed. Courts have found a "clear showing" of likelihood of success on the merits in instances where controlling precedents from the Supreme Court directly resolve the legal issue in plaintiff's favor. *See, e.g.*, *Child Evangelism Fellowship of Md. v. Montgomery Cnty. Pub. Schs.*, 373 F.3d 589, 602 (4th Cir. 2004). They have found no such clear showing on issues that the Supreme Court has not decided in favor of the plaintiff and, in its decisions and separate opinions, has evinced only a possibility, but not a "substantial[] probab[ility]," of doing so. *Planned Parenthood v. Camblos*, 116 F.3d 707, 714 (4th Cir. 1997) (Luttig, J.) (staying the grant of a preliminary injunction pending appeal), *aff'd*, 125 F.3d 884 (4th Cir. 1997) (en banc). A legal right is not

3

sufficiently settled where the question has merely been reserved even though "the reasoning in *Meyer* [*v. Grant*, 486 U.S. 414 (1988)] and [*Buckley v.*] *American Constitutional Law Foundation*[, 525 U.S. 182 (1999)] support[s plaintiffs'] claim." *See Lux*, 131 S. Ct. at 7. Additionally, a split in the circuits on the issue sufficiently deprives a court of the requisite clarity. *Id.* And a reasoned dissent in the case under review also can muddy the jurisprudential waters, precluding the issuance of preliminary relief. *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers). Thus, the question is not whether an individual judge believes the legal conclusion to follow, but whether that judge can say with near certainty that five justices of the Supreme Court would adopt that conclusion. *See Whalen v. Roe*, 423 U.S. 1313, 1317 (1975) (Marshall, J., in chambers).

In this case, a court can no more than tentatively predict how the Supreme Court would resolve a First Amendment challenge to a state-residency requirement for petition circulators. Although the Court has found that initiative "petition circulation is 'core political speech' for which First Amendment protection is 'at its zenith,'" it "has also recognized . . . that 'there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order . . . is to accompany the democratic processes.'" *Am. Constitutional Law Found.*, 525 U.S. at 186-87 (quoting *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988) and *Storer v. Brown*, 415 U.S. 724, 730 (1974), respectively). As the Supreme Court has reiterated, "States . . . have considerable leeway to protect the integrity and reliability of the . . . election processes." *Id.* at 191. Thus, only those "regulations imposing severe

4

burdens on speech . . . [must] be narrowly tailored to serve a compelling state interest." *Id.* at 192 n.12. The Court has also recognized that States have a "strong interest in policing lawbreakers among petition circulators," *id.* at 196, has noted that a State is not required to use the least restrictive means "'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation,'" *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (quoting *United States v. Albertini,* 472 U.S. 675, 689 (1985)), and has cautioned that there is "'no substitute for the hard judgments that must be made'" in distinguishing valid from invalid ballot-access restrictions. *Am. Constitutional Law Found.*, 525 U.S. at 192 (quoting *Storer*, 415 U.S. at 730).

This judgment cannot be made with sufficient certainty at the preliminary injunction stage. The Supreme Court in *American Constitutional Law Foundation* assumed, without deciding, that the very requirement at issue here may be justified by the State's significant interest in punishing and deterring election fraud. *See also Doe*, 130 S. Ct. at 2819-20 (holding that "[t]he State's interest in preserving the integrity of the electoral process is undoubtedly important," that "[t]he State's interest is particularly strong with respect to efforts to root out fraud," and thus that a law mandating the "public disclosure of referendum petitions in general is substantially related to the important interest of preserving the integrity of the electoral process" to withstand constitutional scrutiny). The *American Constitutional Law Foundation* Court struck down a requirement that petition circulators be registered voters as insufficiently tailored to the State's interest in

5

having petition circulators subject to the State's subpoena power, relying in part on the assumption that the State's residency requirement for petition circulators, though not before it, accomplished the same end and "would be upheld as a needful integrity-policing measure." 525 U.S. at 197. The Commonwealth advances just this interest. And, what is more, no petition circulator restriction outside the ballot initiative context has ever been invalidated by the Supreme Court.

Furthermore, the two Courts of Appeals that have squarely considered, post-*American Constitutional Law Foundation*, whether a state-residency requirement for petition circulators comports with the Constitution reached contradictory conclusions. *Compare Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 615-17 (8th Cir. 2001) (upholding state-residency requirement), *with Nader v. Brewer*, 531 F.3d 1028, 1037-38 (9th Cir. 2008) (holding that a state-residency requirement for petition circulators was invalid, relying on a supposedly more narrow means: requiring out-of-state circulators to consent to state jurisdiction). *See also Lerman v. Bd. of Elections, N.Y.C.*, 232 F.3d 135, 150 (2d Cir. 2000) (rejecting a political-subdivision-residency requirement for petition witnesses on the ground that the justification, "to ensure that the petition witness be answerable to a subpoena," was "already served by the less burdensome requirements" of state residency). Restrictions upon the circulation of ballot initiatives, *see, e.g.*, *Yes on Term Limits v. Savage*, 550 F.3d 1023 (10th Cir. 2008), which unlike the circulation of candidate petitions "of necessity involve[] both the expression of a desire for political change and a discussion of the merits of the proposed change," *Meyer*, 486 U.S. at 421, or

6

residency requirements keyed to subdivisions of the state, not state residency, were the requirements under review in the other cases cited by plaintiffs. *See, e.g.*, *Nader v. Blackwell*, 545 F.3d 459, 467 n.2 (6th Cir. 2008) (county and precinct-residency requirement); *Chandler v. City of Arvada, Colo.*, 292 F.3d 1236, 1238 (10th Cir. 2002) (city-residency requirement); *Lerman*, 232 F.3d at 138 (political-subdivision-residency requirement). Hence the state of the law is this: the one court to strike down a state-residency requirement -- the Ninth Circuit in *Nader* -- posited a more narrow remedy for ensuring criminal jurisdiction that is inadequate on its face. That decision is not capable of satisfying the heightened certainty required here because the Eighth Circuit disagreed in *Jaeger* and *Nader* is contrary to strong dicta of the Supreme Court.

This is what Chief Justice Roberts essentially said when he denied an application for preliminary injunctive relief against Virginia's now-repealed district residency requirement for petition circulators. *Lux*, 131 S. Ct. at 7. The Chief Justice's denial followed on the heels of the Fourth Circuit's and Eastern District's denials of the same motion. *See id.* at 6; *Lux v. Rodrigues*, No. 10-1997 (4th Cir. Sept. 15, 2010); *Lux v. Rodrigues*, 736 F. Supp. 2d 1042 (E.D. Va. 2010). Citing the split in authority regarding the constitutionality of state-residency requirements for petition circulators, Chief Justice Roberts refused to enjoin application of a substantially more restrictive petition circulator requirement than the one challenged here, allowing that "even if the reasoning in *Meyer* and *American*

7

*Constitutional Law Foundation* does support [plaintiff's] claim, it cannot be said that his right to relief is 'indisputably clear.'" *Id.* (citation omitted).

A later merits appeal in that case saw the Fourth Circuit reach a similar conclusion regarding the state of the law, electing to reserve the issue of the constitutionality of the district-residency requirement. *See Lux v. Judd*, 651 F.3d 396, 404 (4th Cir. 2011). Despite concluding, in view of the reasoning of *Meyer* and *American Constitutional Law Foundation*, that it could "no longer say that an in-district witness requirement is necessarily justified by a state's desire to gauge the depth of a candidate's support," the Fourth Circuit reversed the dismissal of the case on the ground that the superseded decision was no longer controlling, leaving open the possibility "that something more than a threshold signature requirement may, in some circumstances, be constitutionally permissible as a means of ensuring popular support or achieving another state interest." *Id.*

Finally, two district judges in the Eastern District of Virginia have reached contrary conclusions, albeit in dicta, regarding the constitutionality of the state-residency requirements. On remand from the Fourth Circuit's decision in *Lux*, Judge Hudson held the district-residency requirement "is too widely tailored to pass constitutional scrutiny," but premised that decision upon "the availability of other equally effective and decidedly less burdensome statutory tools to safeguard the Commonwealth's interest in protecting the integrity of the electoral process," including the requirement that "petition circulator[s] resid[e] in . . . Virginia," rendering them "subject to the state's subpoena power." *Lux v. Judd*, No. 3:10-cv-

8

482, 2012 U.S. Dist. LEXIS 15732, at *18, *21-22 (E.D. Va. Feb. 8, 2012). On the other hand, in an earlier challenge to the Virginia residency requirement for petition circulators, another district judge predicted that "that the split [of authority] will be resolved against the validity of [the Virginia residency] requirement[.]" *Perry v. Judd*, No. 3:11-CV-856, 2012 U.S. Dist. LEXIS 4290, at *27-28 (E.D. Va. Jan. 13, 2012). That two sitting judges of the Eastern District of Virginia reached contradictory conclusions prevents this Court from now holding that plaintiffs satisfy the heightened standard of likelihood of success. And, given the strength of the State's interest in ballot integrity, pursued through deterring and punishing election fraud, the narrowness of the restriction, the limited enforcement resources available, and the illusory nature of any other alternative for ensuring that petition circulators be within the subpoena power of the Commonwealth, *see* Va. Sup. Ct. R. 3A:12(c), the plaintiffs have not shown that they are likely to prevail at all on any standard. Plaintiffs thus should not be accorded preliminary mandatory injunctive relief.

The uncertainty of the ultimate result in the Supreme Court is complicated by the fact that plaintiff Bonner is a professional circulator who could easily hire qualified residents. This both reduces the burden on speech and emphasizes that plaintiffs are de facto attempting to make political participation in out-of-state elections an Article IV privilege and immunity of national citizenship. Nothing from the Supreme Court foreshadows acceptance of this position. Instead, the Supreme Court has afforded wide latitude in limiting the enjoyment of basic

9

political rights to the members of the body politic of each state. *See Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978) (citing examples). Accordingly, this Court should not, in ruling preliminarily on the constitutionality of the Virginia residency requirement, accept what amounts to a new privilege and immunity, one that is neither historically founded nor one that "bear[s] upon the vitality of the Nation as a single entity." *Id.*

## CONCLUSION

Because plaintiffs' claim of likelihood of success cannot withstand the more searching and exacting standard of review applicable to motions for preliminary mandatory injunctive relief, their motion should be denied.

        Respectfully submitted,

        CHARLES JUDD, KIMBERLY BOWERS
        and DON PALMER, in their official
        capacities

               /s/
        E. Duncan Getchell, Jr.
        Solicitor General of Virginia
        (VSB No. 14156)
        Office of the Attorney General
        900 East Main Street
        Richmond, Virginia 23219
        (804) 786-7240 – Telephone
        (804) 371-0200 – Facsimile
        dgetchell@oag.state.va.us
        *Counsel for Defendants Judd,*
        *Bowers and Palmer*

Kenneth T. Cuccinelli, II
Attorney General of Virginia

E. Duncan Getchell, Jr., VSB #14156
Solicitor General of Virginia
E-mail:  dgetchell@oag.state.va.us

Wesley G. Russell, Jr., VSB #38756
Deputy Attorney General
E-mail:  wrussell@oag.state.va.us

Joshua N. Lief, VSB #37094
Senior Assistant Attorney General
Email:  jlief@oag.state.va.us

Michael H. Brady, VSB #78309
Assistant Attorney General
E-mail:  mbrady@oag.state.va.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of May, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record for Plaintiffs:

| | |
|---|---|
| Rebecca K. Glenberg, Esquire, <br> VSB # 44099 <br> American Civil Liberties Union of Virginia Foundation, Inc. <br> 503 East Main Street, Suite 310 <br> Richmond, Virginia 23219 <br> Phone: (804) 644-8080 <br> Fax: (804) 649-2733 <br> rglenberg@acluva.org | Katie O'Connor, Esquire (*pro hac vice* pending) <br> American Civil Liberties Union Foundation, Inc. <br> 230 Peachtree Street, NW, Suite 1440 <br> Atlanta, Georgia 30303 <br> Phone: (404) 523-2721 <br> Fax: (404) 653-0331 <br> koconnor@aclu.org |

                                                    /s/
E. Duncan Getchell, Jr.
Solicitor General of Virginia
(VSB No. 14156)
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
dgetchell@oag.state.va.us
*Counsel for Defendants Judd, Bowers and Palmer*