IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA



Richmond Division

LIBERTARIAN PARTY OF VIRGINIA and
DARRYL BONNER,
               Plaintiffs,

v.                                   Civil Action No. 3:12cv367-JAG

CHARLES JUDD, KIMBERLY BOWERS, and
DON PALMER,
Members of the Virginia State Board of Elections,
in their official capacities,
               Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary judgment. In this case, the Libertarian Party of Virginia, a third-party political organization, and Darryl Bonner (collectively, "the plaintiffs"), a paid professional petition circulator and resident of Pennsylvania, seek to place a Libertarian presidential candidate on the Virginia ballot. To appear on the ballot, Virginia law requires candidates or the political parties to submit a petition with certain minimum signature requirements. These petitions may only be circulated by Virginia residents. The plaintiffs argue that limiting petition circulators to Virginia residents violates the First and Fourteenth Amendments of the Constitution. They ask the Court to issue a declaratory judgment finding Virginia's residency requirement on petition circulators unconstitutional, as well as a permanent injunction against the requirement's enforcement.

Defendants Charles Judd, Kimberly Bowers, and Don Palmer (collectively "the Board"), members of the Virginia State Board of Elections, argue that the plaintiffs have not been injured

by the law. The Board asks the Court to dismiss the plaintiffs' claim for lack of standing and, thus, lack of subject matter jurisdiction.

Ultimately, the Court finds that the state-residency restriction on ballot circulation injures both plaintiffs; they have standing to challenge the law pursuant to their Constitutional rights to free speech and political expression. Accordingly, the defendants' motion for summary judgment will be denied.

Furthermore, the Court finds the restriction on out-of-state petition circulators to be unconstitutional. The law places a severe burden on the plaintiffs' freedom of speech and is not narrowly tailored to promote a compelling state interest. Accordingly, the plaintiffs' motion for summary judgment will be granted. The defendants shall be enjoined from enforcing the unconstitutional restriction contained in Va. Code § 24.2-543.

## I. Background

The Libertarian Party of Virginia ("the LPVA") is a third-party political organization that regularly fields candidates for various state and federal-elected positions. As a party that failed to garner 10 percent of the total votes cast in either of the two most recent statewide general elections, the LPVA is not recognized as a "political party" in Virginia. *See* Va. Code § 24.2-101. To appear on the ballot, non-political parties like the LPVA must submit a petition signed by at least 10,000 qualified Virginia voters, including at least 400 qualified voters from each of Virginia's eleven congressional districts. Va. Code § 24.2-543. In addition, each signature must be witnessed by a legal Virginia resident who is neither a minor nor a felon with restored voting rights—this is the specific restriction at issue in the case. *Id.*

In order to ensure its candidates appear on the ballot in Virginia, the LPVA uses both volunteer and paid professionals to circulate petitions and collect the requisite signatures. The

LPVA states that it is aware of only two professional circulators who are members of the Libertarian party, residents of Virginia, and consistently available to circulate petitions. (Pls.' Compl. ¶ 16.)  According to the LPVA, it has relied on these two paid circulators to obtain signatures in past elections and its continued success in obtaining ballot access depends on those individuals' efforts.  The LPVA's national counterpart, the Libertarian National Committee, has existing relationships with paid circulators who could supplement the LPVA's petition circulation, but cannot because of Virginia's residency restriction.

Darryl Bonner, a New York resident and registered Libertarian, is a self-employed professional campaign circulator and canvasser.  He has circulated petitions for nearly twenty years, working exclusively for third-party candidates and organizations in various states, including Virginia.[1]  Bonner is suffering from a knee injury, however, which requires surgery and limits his ability to physically circulate petitions at present.  He currently works in Pennsylvania as a coordinator for the Libertarian Party.

Bonner considers circulating petitions an important means of expressing his political beliefs regarding third-party candidates, specifically their ability to appear on the ballot.  In the past, Bonner has circulated petitions in states with residency requirements by working with a state resident who served as the official signature witness ("resident-witness").  He found this accompaniment cumbersome and a hindrance to effectively communicating his beliefs, as resident-witnesses were not consistently available and would often need to rest when Bonner wanted to continue collecting signatures.  Additionally, resident-witnesses would sometimes interrupt Bonner's conversations with potential signatories to assert their own opinions, leading to argument and, in some instances, causing the individual to decide against signing the petition.

---

[1] Bonner circulated petitions in Virginia in either 2004 or 2006 and in 2008 (Bonner's Resp. to Defs.' Interrog. No. 4.)

(Bonner's Resp. to Defs.' Interrog. No. 5.)  Bonner would like to circulate petitions in Virginia, but cannot do so without a resident-witness, which allegedly slows his signature-gathering efforts and inhibits his ability to effectively communicate with the voting public. (Pls.' Compl. ¶¶ 18-19.)

The LPVA and Bonner challenge Va. Code § 24.2-543 on the grounds that it inhibits their constitutional rights to free speech and political expression.

## II. <u>Standard of Review</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.  *Id.* at 255.  In reviewing cross motions for summary judgment, as in the immediate case, the Court must review each motion separately on its own merits "'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Phillip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To defeat an otherwise properly supported motion for summary judgment, the nonmoving party "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, the mere existence of a scintilla of evidence, or the appearance of some metaphysical doubt concerning a material fact." *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (internal quotation marks and citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### III. Discussion

As a preliminary matter, the Court finds that the plaintiffs have standing to bring the present action challenging the constitutionality of the residency restriction on petition circulators for presidential candidates. Further, the Court finds that Va. Code § 24-543 is unconstitutional because it unduly restricts the plaintiffs' First Amendment right to free speech. The plaintiffs are entitled to an injunction for the reasons stated below.

### A. Standing

Article III standing is a fundamental jurisdictional requirement that defines and limits a court's power to resolve cases and controversies. *Miller v. Brown*, 462 F.3d 312, 316-21 (4th Cir. 2006); *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005). Standing requires that a litigant have a personal stake in the outcome of a controversy as a result of having suffered some actual or threatened injury. *Kay v. Austin*, 621 F.2d 809, 811 (6th Cir. 1980) (citing *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979)); *see Warth v. Selden*, 422 U.S. 490, 498-501 (1975). Accordingly, a litigant must demonstrate: (1) a distinct and palpable injury, (2) a fairly traceable causal connection between the claimed injury and the challenged conduct, and (3) a substantial likelihood that the injury is redressable by the relief requested. *Bennett v. Spear*,

520 U.S. 154, 162 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 72, 75 n.20 (1978).

Here, the Board claims that both plaintiffs lack standing as neither is presently injured nor in danger of injury by the ballot-circulator restriction. According to the Board, because the plaintiffs do not have immediate plans to use non-resident circulators in Virginia, they are not presently harmed by the regulation. This argument misses the point—the plaintiffs' constitutional rights were infringed because the Virginia law hinders the plaintiffs' current ability to circulate in Virginia despite any past or future plans for expression. The Board essentially criticizes the parties for not having engaged in voter fraud by circulating petitions in violation of the Virginia residency requirement. The plaintiffs need not break the law in order to incur injury; the fact that their speech has been significantly curbed by the residency limitation is injury enough.

Moreover, the fact that Bonner is limited in his physical ability to circulate petitions is irrelevant to the Court's instant analysis. Bonner has been circulating petitions for nearly twenty years, often in several states per year including Virginia, and considers his work "an important way . . . to convey Libertarian values and policies to citizens throughout the country." (Bonner's Resp. to Defs.' Interrog. No. 5.) Bonner has a well-established history of circulating petitions in Virginia and has indicated his intent to circulate in the future. Bonner is injured, not incapable of circulation, and his present mobility restriction in no way decreases his credibility.[2] *See, e.g., Daien v. Ysursa*, 711 F. Supp. 2d 1214 (D. Idaho 2010) (holding that an individual's past political activities and intent to circulate petitions in the future demonstrated "more than a

---

[2] Additionally, the fact that Bonner is paid to circulate petitions has no bearing on whether the activity is less important to him. If anything, the fact that Bonner has chosen to dedicate his career to supporting causes he believes in demonstrates a commitment to his beliefs and supports his claim of injury.

passing fancy" and supported his claim of standing); *accord Idaho Coal. United for Bears v. Cenarrusa*, 234 F. Supp. 2d 1159, 1162 (D. Idaho 2001).

The Supreme Court has held that restrictions on who may ultimately disseminate ballot petitions injure circulators, regardless of the effort's ultimate success. *Meyer v. Grant*, 486 U.S. 414, 422-24 (1988). Other circuits have specified, and this Court agrees, that restrictions on petition circulation causes injury by depriving people of their choice of advocates and by limiting the pool of circulators who carry their message—thus reducing the size of their audience and requiring organizations to allocate precious resources elsewhere. *See Nader v. Blackwell*, 545 F.3d 459, 472 (6th Cir. 2008); *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008); *Krislov v. Rednour*, 226 F.3d 851, 857-58 (7th Cir. 2000); *Lerman v. Bd. Of Elections*, 232 F.3d 135, 142-43 (2d Cir. 2000). The fact that both plaintiffs have ultimately been successful in past petition efforts in no way shows that the residency restriction is harmless to the plaintiffs. The injury to the plaintiffs is clearly established and more than adequate to entitle the parties to standing.[3]

### B. The Constitutionality of the Residency Requirement

#### 1. Level of Scrutiny

Circulating ballot petitions and its concomitant political dialogue are protected speech under the First Amendment. *See Meyer*, 486 U.S. at 421-22 ("the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'"); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186-87 (1999); *Lux v. Judd*, No. 3:10cv482, 2012 WL 400656, at *4-5 (E.D. Va. Feb. 8, 2012). Regulations which impose severe burdens on individual freedoms are subject to strict

---

[3] The Court also finds that there is a traceable causal connection between the plaintiffs' injury and the restriction on circulator residency. Moreover, there is a substantial likelihood that the injury can be redressed via an injunction issued by this Court. As the plaintiffs satisfy all three elements of standing, the Board's motion for summary judgment will be denied.

scrutiny, whereas regulations which impose lesser burdens are subject to less stringent review. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). The Supreme Court's decision in *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999) is instructive and guides the Court's analysis in the instant matter. In *Buckley*, the Supreme Court struck down a Colorado regulation that required ballot initiative circulators be registered voters, holding that the requirement "cuts down the number of message carriers in the ballot-access arena without compelling cause." *Id.* at 197.

The Court recognizes that neither *Buckley* nor any subsequent Supreme Court cases have addressed the precise issue before the Court: whether a state residency requirement for ballot petitioners should be upheld. In deciding *Buckley*, the Supreme Court expressly chose not to address the state residency requirement of the Colorado statute. *See id.* at 645 (noting that the constitutionality of the state residency requirement is "a question we, like the Tenth Circuit, have no occasion to decide") (internal citation omitted). Since the *Buckley* decision, however, the weight of decisions from courts of appeals has held residency requirements as violative of First Amendment free speech rights. *See Blackwell*, 545 F.3d 459 (holding that an Ohio law requiring candidate petition circulators to be registered to vote and residents of the state implicated and violated out-of-state circulators' First Amendment rights); *Yes on Term Limits v. Savage*, 550 F.3d 1023 (10th Cir. 2008) (striking down an Oklahoma statute banning the use of non-resident initiative and referendum petition circulators); *Krislov*, 226 F.3d 851 (striking down a statute requiring that candidate petition circulators be registered voters in the political subdivision in which the candidate is seeking office on the grounds that it violated non-residents of the state's First Amendment free speech rights in circulating on behalf of a U.S. Senate candidate).

This year, the Court has addressed a similar residency requirement in Virginia. *See Lux*, 2012 WL 400656. Like the instant case, the law at issue required independent congressional candidates to secure signatures on petitions to appear on the ballot; in addition, the law required that petition circulators be residents of the district in which the candidate seeks office. *See* Va. Code § 24.2-506. Under the instruction of the Fourth Circuit, this Court analyzed the restriction in light of *Buckley* and *Meyer*.[4]  *See Lux v. Judd*, 651 F.3d 396 (4th Cir. 2011). Within that framework, this Court held that the district residency requirement on petition circulation involved core political speech protected by the First Amendment and was, therefore, subject to strict scrutiny. *Lux*, 2012 WL 400656, at *4-5. Neither *Lux* nor any Fourth Circuit case addresses whether *state* residency restrictions on petition circulators involve core political speech.

Directly on point, however, is *Nader v. Brewer*, in which the Ninth Circuit struck down an Arizona law that required petition circulators to be state residents. 531 F.3d 1028. Extending *Buckley* to voter eligibility and state residency requirements, the Ninth Circuit found that, despite the "millions of potential Arizona circulators, the residency requirement nevertheless excludes from eligibility all persons who support a candidate but who, like Nader himself, live outside the state of Arizona." *Id.* at 1036. In so doing, the state residency requirement "create[d] a severe burden on Nader and his out-of-state supporters' speech, voting and associational rights." *Id.* The Ninth Circuit held that these burdens implicated the plaintiffs' First Amendment rights and the regulation was therefore subject to strict scrutiny. *Id.*; *see also, e.g., Blackwell*, 545 F.3d 459; *Yes on Term Limits*, 550 F.3d 1023; *Krislov*, 226 F.3d 851; *Citizens in Charge v. Gale*, 810

---

[4] *Meyer* involved a state regulation which criminalized compensating petition circulation. 486 U.S. 414 (1988). The Supreme Court invalidated it as an undue restriction on First Amendment freedom of speech.

F. Supp. 2d 916 (D. Neb. 2011); *Daien*, 711 F. Supp. 2d 1215. The Court agrees with the rationale in *Brewer*. As in *Brewer*, the restriction before the Court is less burdensome than those before the Supreme Court in *Buckley*. Yet, the rationale is the same: the provision ultimately limits the number of voices who can convey the candidates' messages, thereby reducing "the size of the audience [the candidates] can reach." *Buckley*, 525 U.S. at 194-95.

The First Amendment places a premium on political speech, particularly speech about political change. The drafters fashioned the First Amendment "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Krislov*, 226 F.3d at 858 (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). By imposing a state residency requirement on petition circulators, the Board deprives non-residents of a means to engage in core political speech and reduces the quantity of such speech available to its residents. *See Perry v. Judd*, 3:11cv856, 2012 WL 113865, at *10 (E.D. Va. Jan. 13, 2012). This deprivation directly infringes upon the Constitutional rights of candidates, voters, petition circulators, and political parties and is subject to the most exacting scrutiny by this Court.

### 2. *Strict Scrutiny Analysis*

#### a. Virginia's Compelling State Interest

Applying a traditional strict scrutiny analysis, the Board carries a heavy burden in justifying the state residency restriction. It must show not only that it achieves a compelling state interest, but also that it is no broader in scope than necessary to achieve that purpose. *Timmons*, 520 U.S. at 359. In the context of the First Amendment, the Court must "be vigilant . . . to guard against undue hindrances to political conversations and the exchange of ideas." *Buckley*, 525 U.S. at 192 (quoting *Meyer*, 486 U.S. at 421).

10

Here, the Court finds that the residency restriction clearly seeks to achieve a compelling state interest. The Board argues that the residency restriction is in place to protect the integrity of elections and to prevent and punish fraud. It is well established that states have a compelling interest in protecting the validity of their electoral process. *Doe v. Reed*, 130 S. Ct. 2811, 2819 (2010); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). As the Board claims, the regulation enables it to confirm the identities of petition circulators and ensure that these individuals are subject to Virginia's subpoena power, which is necessary in order to subject circulators to criminal prosecution and properly police election fraud.[5]

### b. Narrowly Tailored

Despite the Commonwealth's compelling interest, the law at issue is unconstitutional because the residency requirement is not narrowly tailored. The Commonwealth must show that the restriction is no broader in scope or burdensome than necessary to achieve its purpose. *Brewer*, 531 F.3d at 1037; *Krislov*, 226 F.3d at 863. The Board fails to establish that allowing non-residents to circulate petitions increases the instances of fraud. To establish the need to regulate non-resident circulators, the Board relies on defendant-Palmer's deposition and declaration noting instances of campaign fraud in other states. Yet, the Court is unconvinced that such bald assertions are sufficient to establish a need to exclude non-residents from serving as petition circulators.

---

[5] This Court is somewhat skeptical as to whether or not submission to the Commonwealth's subpoena power actually achieves the state's compelling state interest. As we have recognized, "the critical signature on the petition is not that of the circulator, but that of the voter" who is necessarily subject to the state's subpoena power by virtue of residency. *Perry*, 2012 WL 113865, at *10. Though the Board certainly has a compelling interest in preserving the electoral process's integrity, it does not necessarily follow that meeting this goal requires petition circulators to submit to the Commonwealth's subpoena power.

As an initial matter, the Board in no way establishes that non-residents are more likely to commit fraud then residents. The Board fails to allege a single instance of voter fraud in Virginia involving a non-resident.[6] While the Board does cite instances of non-residents engaging in voter fraud elsewhere, this allegation does not support the contention that the fraud was committed because these individuals were non-residents. Moreover, the Court is not persuaded that such an argument is valid, as multiple courts have rejected the idea that non-residents are inherently less honest. *See, e.g., Meyer*, 486 U.S. at 426; *Brewer*, 531 F.3d at 1037; *Yes on Term Limits*, 550 F.3d at 1029.

Additionally, the Board contends that the residency requirement is necessary to ensure that circulators are within the state's subpoena power. The courts in *Brewer, Yes on Term Limits, Chandler, Citizens in Charge*, and *Perry* have all stated that such an interest is not narrowly tailored, as states could require circulators to submit to their subpoena power before becoming a circulator. Beyond bald assertions that such submission is ineffective and that the Board is unaware of any instance wherein an individual was extradited from one state to another to face prosecution, the Board has failed to demonstrate how such a requirement would be insufficient. No evidence has been presented that Virginia has been unable to prosecute a fraudulent circulator because he or she was not a resident of the Commonwealth. Likewise, difficulties other states have faced in prosecuting non-residents engaging in petition fraud are unhelpful without further information as to those states' efforts to police fraud and regulate elections. In short, the Board has failed to show that the Virginia law requiring petition

---

[6] Additionally, nearly each incident proffered involves merely accusations of fraud, as opposed to a finding of fraudulent activities. Challenging the validity of petition signatures is an oft-employed political tactic which, if successful, serves to eliminate some competition on the ballot. Accordingly, such accusations of voter fraud, without more, amount to nothing more than the opposition's typical procedure.

circulators to be residents of the Commonwealth is a narrowly tailored means to preserve the integrity of the electoral process.

For these reasons, Virginia's residency requirement on petition circulation cannot withstand strict scrutiny. The Court finds that Va. Code § 24.2-543 violates the First and Fourteenth Amendments to the United States Constitution. The Court will grant summary judgment to the plaintiffs.

## IV. Conclusion

In sum, the Court finds that the plaintiffs have standing because the regulation burdens their Constitutional rights to free speech and political expression. Further, the residency requirement is unconstitutional as it is not narrowly tailored to achieve its purpose and promote a compelling state interest. Accordingly, the defendants' motion for summary judgment will be denied; the plaintiffs' motion for summary judgment will be granted.

The Court will enter an appropriate order.

Date: July 30, 2012
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

13